Cynthia L. THOMPSON, Plaintiff,

v.

**LA PETITE ACADEMY, INC., Defendant.**

Civ. A. No. 92–4226–DES.

United States District Court, D. Kansas.

Nov. 23, 1993.

See publication Words and Phrases for other judicial constructions and definitions.

Floyd E. Gehrt, Ron D. Martinek, William A. Larson, Gehrt & Roberts, Chartered, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the defendant for summary judgment (Doc. 36).

The plaintiff, Cynthia L. Thompson, filed this suit against the defendant, La Petite Academy, Inc. ("La Petite") after she was terminated from her employment as a cook and van driver. Plaintiff contends that her pregnancy was a motivating factor for her discharge. The complaint alleges an unlawful employment practice in violation of 42 U.S.C. § 2000e *et seq.* (Title VII), and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.*

La Petite is a corporate day care provider, incorporated under the laws of Missouri, and doing business in Kansas. This court has jurisdiction over plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331, and exercises its supplemental jurisdiction over her pendent state-law claim pursuant to 28 U.S.C. § 1367. Venue is proper in this district under 18 U.S.C. § 1391(b)(2).

### Summary Judgment Guidelines

Under Fed.R.Civ.P. 56(c), the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

■ The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

■ The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

■ The parties to this suit have not filed any depositions or interrogatories with the court. The record available to the court in considering the motion for summary judgment is limited to the complaint, the answer, the stipulations as memorialized in the pretrial order, and the attachments submitted by the parties with their summary judgment pleadings. To the extent that the motion, response, and reply rely for support on citations to depositions that have neither been attached to the parties' summary judgment pleadings nor filed with this court, they must be considered unsupported. *See* Fed. R.Civ.P. 56(c), (e); D.Kan. Rule 206(c).

### Facts

Considering the record in the light most favorable to the plaintiff for purposes of the motion for summary judgment, the facts are as follows.

Cynthia Thompson was hired as a van driver and cook effective August 20, 1990, by Kristi Gydeson (now Lewien), then assistant director at the Topeka La Petite Academy. The plaintiff signed an employment contract on August 29, 1990, which fixed her starting wage at $4.10 per hour and specifically stated that either she or La Petite could terminate her employment at any time. Plaintiff was provided a staff handbook describing the duties of the van driver and cook positions. At the time she was hired, she understood that the cooking schedule and bus route schedule were important aspects of her job, and that she would be required to comply with those schedules in order for her performance to be considered satisfactory. The handbook also included La Petite's written policy that new staff members are on probationary status for the first 90 days of their employment, during which time their performance will be monitored and reviewed with them; and that if their performance does not meet the employer's standards, their employment may be terminated.

Effective September 24, 1990, plaintiff's hourly wage was increased to $4.50 per hour. The increase was requested because plaintiff was considered to be a dependable employee who kept the kitchen clean. The wage increase was requested on September 21, 1990, by Phyllis Stevens in her capacity as the director of the Topeka La Petite Academy, and was approved by the home office on or about October 6, 1990. It is not La Petite's usual practice to grant a wage increase for probationary employees.

Close to the time plaintiff was hired, Joanne Berns ("Berns") was hired as the new director. On October 16, 1990, Berns counselled plaintiff about her job performance. Specifically, she expressed concerns about plaintiff's use of 2½ days of sick leave when she had accumulated only a half day. She also noted that on two occasions plaintiff had left children at La Petite who should have been driven to school. Finally, Berns noted that plaintiff had conducted personal business at La Petite on company time. Plaintiff was advised to minimize her sick days, to find her own substitute or report to work, and to conduct personal business elsewhere. A written report documenting the meeting was signed by both the plaintiff and Berns.

For some time thereafter, plaintiff was unhappy with Berns about the counselling session, and her attitude toward Berns changed noticeably.

Sometime after October 20, 1990, plaintiff learned that she was pregnant, and she advised Berns accordingly.[1]

After plaintiff finished her work day on November 2, 1990, Joanne Berns asked plaintiff to come into her office to talk. Plaintiff went in and sat down. Berns told plaintiff, "I'm going to have to let you go." Plaintiff was shocked and asked why. Berns responded, "Because your attitude has changed since you have become pregnant." Plaintiff left crying.

The assistant manager, Kristi Lewien ("Lewien"), was outside on the playground and noticed plaintiff leaving in tears. When she asked what was wrong, plaintiff told her Berns had fired her, giving as the reason that her attitude had changed too much since she found out she was pregnant. Lewien asked plaintiff to stay on the playground with the children while she went in to talk to Berns. When Lewien asked Berns why she had fired plaintiff, she was told, "Well, Kristi, I think her attitude has just changed too much since she found out she was pregnant." Lewien explained to Berns that plaintiff was upset about how to pay for her pregnancy since she had no insurance. Berns then commented that plaintiff was "too ho-hum," that she walked around with her head down, not smiling, and that she needed to be more perky or happy. After again expressing concern regarding plaintiff's worries about her pregnancy, Lewien left.

On November 7, 1990, Joanne Berns completed an employee termination report. The report noted that the employee had been subjected to disciplinary action prior to her termination. She did not check any of the preprinted reasons listed on the form for the involuntary discharge. In the remarks sec-

tion of the form, however, she wrote the following:

> Several students arrived late to school on the van. Not able to keep up with kitchen duties. Not happy on the job—low energy. One counseling report sent in 10–16–90.

Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission on June 19, 1992, and timely filed this lawsuit on September 17, 1992.

### Analysis

 The defendant contends that there is insufficient evidence to support even a *prima facie* case of employment discrimination on the basis of plaintiff's pregnancy. Specifically, defendant argues that plaintiff is unable to demonstrate that she was performing her job in a satisfactory manner at the time she was terminated. Even if plaintiff is held to have established her *prima facie* case, defendant contends that it has articulated a legitimate, nondiscriminatory reason for her termination, that being unsatisfactory job performance.

 Title VII in part prohibits an employer from discharging any individual because of such person's sex. *See* 42 U.S.C. § 2000e–2(a)(1). In 1978, the Pregnancy Discrimination Act was added to the definitional section of Title VII. *See* 42 U.S.C. § 2000e(k). It provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

---

1. The defendant has submitted the affidavits of individuals who state that they became pregnant while employed at La Petite and experienced no problems with either Joanne Berns or the corporate management. However, at least some of these pregnancies post-dated plaintiff's period of employment with La Petite, and in other instanc- es the record is unclear as to the timing of the pregnancies in relation to plaintiff's termination. The court therefore does not consider these instances conclusive with regard to whether plaintiff's pregnancy was a motivating factor in her termination.

The amendment was made to Title VII in order " 'to prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy.' " *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir.1992) (quoting *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646 (8th Cir.1987)), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). The legislative history of the amendment makes clear that Congress intended to provide relief for working women and to end discrimination against pregnant workers. *Id.* (citing *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 285–86, 107 S.Ct. 683, 691–92, 93 L.Ed.2d 613 (1987)); *Carney v. Martin Luther Home, Inc.,* 824 F.2d at 646–48 (reviewing legislative history).

■■■■ Claims under the Pregnancy Discrimination Act are subject to the same analysis applicable to disparate treatment cases under Title VII. *E.E.O.C. v. Ackerman, Hood & McQueen,* 956 F.2d at 947. In order to establish her Title VII claim, the plaintiff has the ultimate burden of proving that her discharge was motivated by unlawful bias because of her pregnancy. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). She may do so either by presenting direct evidence of discriminatory intent, or by presenting indirect evidence of such intent by proving that the defendant's stated reasons for the discharge were a pretext for a discriminatory decision. *See E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1317 (10th Cir.1992) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973)).

■■■■ In this case, plaintiff has presented direct evidence that she was discharged because of her pregnant condition. The verbal reason given for her termination on November 2, 1990, was clearly tied to her pregnancy, and a reasonable factfinder could conclude from that statement that plaintiff's pregnancy was a factor motivating her discharge. The defendant's arguments that plaintiff lacks evidence to establish a *prima facie* case of discriminatory discharge, or in the alternative that the defendant has advanced a legitimate, non-discriminatory reason for her discharge, are based on a *McDonnell Douglas* analysis, which does not apply when the plaintiff presents direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (*McDonnell Douglas* test inapplicable where plaintiff presents direct evidence of discrimination); *see E.E.O.C. v. Flasher Co.,* 986 F.2d at 1317 (citing *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825); *Carney,* 824 F.2d at 648 (district court erred in applying *McDonnell Douglas* analysis because plaintiff presented direct evidence of discrimination).

### Conclusion

The ultimate question in this case is whether or not the plaintiff's pregnancy was a motivating factor in the defendant's decision to terminate her employment. Plaintiff has presented sufficient direct evidence in support of such a finding to present a genuine issue of material fact, thereby precluding summary judgment. *See Flasher,* 986 F.2d at 1317 (ultimate finding of whether there was intentional discrimination against a protected class is a question of fact for the district court to decide).

The plaintiff asks this court to impose sanctions pursuant to Fed.R.Civ.P. 11, contending that the defendant's motion for summary judgment is frivolous. Considering the record as a whole, the court does not consider the defendant's motion frivolous to the extent that sanctions are warranted.

**IT IS BY THE COURT THEREFORE ORDERED** that the defendant's motion for summary judgment (Doc. 36) is hereby denied.

**IT IS FURTHER ORDERED** that the plaintiff's request for Rule 11 sanctions (Doc. 45) is hereby denied.